UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

JOEL MELBY and                    Case No. 1:25-cv-07369
MELBY LLC

     Plaintiffs

v.

VEEA INC.,
VEEASYSTEMS INC.,
ALLEN SALMASI,
JANICE SMITH, and
MICHAEL SALMASI,

     Defendants,

JPMORGAN CHASE BANK, N.A.,
GOLDMAN SACHS BANK USA,
THE BANK OF NEW YORK
MELLON,
CITIBANK, N.A.,
BANK OF AMERICA, N.A.
MORGAN STANLEY PRIVATE
BANK, N.A.,
WELLS FARGO BANK, N.A.,
HSBC BANK USA, N.A.,
TD BANK, N.A.,
CAPITAL ONE, N.A.,
U.S. BANK N.A.,
PNC BANK, N.A.,
And
TRUIST BANK,

     Trustee Defendants.

_____

**<u>VERIFIED COMPLAINT AND JURY DEMAND</u>**

1

Joel Melby and Melby LLC, by their undersigned attorneys, for their Verified Complaint, state as follows:

## Introductory Statement

1. The plaintiffs, Joel Melby and Melby LLC (collectively, "**Melby"**), provided consulting and other services to the corporate defendant, Veea, Inc. ("**Veea"**), under the terms of a written contract, the terms of which were later amended and extended. Melby's scope of work was defined by Veea, which gave him a title, tasked him with leading strategic planning meetings among other things, and had him use company email addresses when performing tasks for the company. Veea, for all intents and purposes, held Melby out to third parties as an employee, although it paid him as an independent contractor. Melby provided services to Veea in the usual course of, and integral to, Veea's business. Veea also controlled Melby's hours, provided him with tools of trade, and directed the scope of his work. For approximately four years, Veea was Melby's primary source of income. Over the course of several months, Veea continued to pay Melby late. During the last several weeks of the parties' affiliation, Veea failed to pay Melby at all. In the summer of 2025, Melby, through counsel, made several written demands on Veea, and on certain of its officers deemed to be control persons for personnel and payroll purposes who are named as defendants herein. Veea made no response to any of these demands. Melby now brings this Complaint for, *inter alia,* violations of the Massachusetts Wage Act, the New York Labor Law, breach of contract, and negligent and intentional infliction of emotional distress. As of the date of the within Verified Complaint, Veea has failed to pay and owes Melby approximately $118,417.70, for work performed and delivered, exclusive of treble damages, costs, attorney's fees, and interest under the Massachusetts Wage Act and the

New York Labor Law. At the outset, to secure recovery of an expected judgment, Melby seeks an attachment on trustee process of accounts of the defendants believed to be held by one or more of the named trustee defendants.

## **PARTIES**

2. The Plaintiff, Joel Melby, is an individual with a residence located at 11 Garden Drive, Mashpee, Massachusetts 02649.

3. The Plaintiff, Melby LLC, is a Massachusetts limited liability company with a principal place of business located at 11 Garden Drive, Mashpee, Massachusetts 02649. At all times material hereto, Joel Melby has been the sole owner of Melby LLC, and the sole recipient of its income.

4. The defendant, Veea Inc. ("**Veea**"), is a Delaware publicly traded corporation with a principal place of business located at 164 East 83rd Street, New York, New York 10028.

5. The defendant, VeeaSystems Inc. ("**VeeaSystems**"), is a wholly owned subsidiary of Veea with a principal place of business located at 164 East 83rd Street, New York, New York 10028.

6. The defendant, Allen Salmasi, is the Chief Executive Officer (CEO) of Veea, with a residence located, upon information and belief, at 30 East 85th Street, Apartment 3B, New York, New York 10028.

7. The defendant, Janice Smith, is the Chief Operating Officer (COO) of Veea, with a residence located, upon information and belief, at 305 East 40th Street, Apartment 2K, New York, New York, 10016.

3

8. The defendant, Michael Salmasi, is the CEO of Veea Solutions, Inc., a wholly owned subsidiary of Veea, and is also co-founder of Veea, with a residence located, upon information and belief, at 205 East 85th Street, Apartment 18E, New York, New York 10028.

## JURISDICTION AND VENUE

9. This is a civil action asserting state common law and statutory claims arising from alleged violations of the Massachusetts and New York Wage Acts, breach of contract, and negligent and intentional infliction of emotional distress.  This Court has jurisdiction pursuant to 28 U.S.C. § 1332 in that all of the plaintiffs are citizens of Massachusetts and all of the defendants are citizens of New York, and the amount in controversy exceeds $75,000.

10. This Court also has supplemental jurisdiction under 28 U.S.C. § 1367.

11. Venue in this district is proper pursuant to 28 U.S.C. §§ 1391(b)(2) and 1391(c) in that a substantial part of the events and omissions giving rise to the claims occurred or are continuing to occur in this district.

12. Venue is proper also because the contract under which some of the claims are brought provides for jurisdiction and venue exclusively in the state and federal courts of New York.

13. This Court has jurisdiction over Defendant, Veea, which is a citizen of New York and/or has a principal place of business located in New York, New York.

14. This Court has jurisdiction over Defendant, VeeaSystems, which is a citizen of New York and/or has a principal place of business located in New York, New York.

15. This Court has jurisdiction over Defendant, Allen Salmasi, who is a citizen of New York and/or has a principal place of business located in New York, New York.

16. This Court has jurisdiction over Defendant, Janice Smith, who is a citizen of New York and/or has a principal place of business located in New York, New York.

17. This Court has jurisdiction over Defendant, Michael Salmasi, who is a citizen of New York and/or has a principal place of business located in New York, New York.

Trustee Process Jurisdiction

18. This Court has jurisdiction over the Trustee defendants because each has a usual place of business in this district. Upon information and belief, the trustees maintain accounts or goods, effects, and/or credits of one or more of the defendants.

**FACTUAL STATEMEN**T

19. Joel Melby, acting by and through his limited liability Company, Melby LLC, entered into a Consulting Services Agreement with Veea dated December 2, 2019 (the "**Agreement").** The initial term of the Contract was for 2 months, expiring on January 31, 2020. In the Contract, Melby is defined as an independent contractor, not entitled to Company benefits, but responsible for paying his own taxes and providing for his own insurance. A true and accurate copy of the Contract is attached hereto and incorporated herein by reference as **Exhibit A.**

20. After the expiration of the initial agreement, Melby requested that it be renewed, but it was not renewed. Thereafter, Melby continued to provide to Veea services of the same type that he had been providing under the Contract, but with an expanded scope. For example, he

5

quickly became an integral member of the Veea management team, with full access and involvement with activities, projects, and Company personnel.

21. On or about June 28, 2022, the parties executed **Amendment No. 1** to the Consulting Services Agreement, although the amendment was backdated to February 1, 2020 – two and a half years earlier.

22. Pursuant to Amendment No. 1, the term of the Consulting Services Agreement was converted to a month-to-month basis, although the backdated amendment was simply a memorialization of the situation that had been in place for the previous two and a half years. A true and accurate copy of Amendment 1 is attached hereto and incorporated herein by reference as **Exhibit B.**

23. As of February 1, 2021, Melby's workload assigned by Veea ramped up to in excess of 160 hours per month with no cap on payments.

24.  As of October 1, 2021, Veea, by and through Jeff Friedman (then Chief Financial Officer), Defendant, Smith, and Mark Tubinis (Chief Commercial Officer), represented verbally to Melby that there existed a unilateral $25,000 payment cap (irrespective of hours worked and billed), although this was inconsistent with both the parties' contract terms and historical payment patterns that Veea had followed up to that point.

25. As of October 28, 2022, Mark Tubinis of Veea represented verbally to Melby that his billing should be capped at $12,500. The parties did not execute a contract amendment to this effect, nor did Veea provide Melby with any written notification or confirmation of such a policy.

26. Subsequently, on or about December 2, 2022, Mark Tubinis informed Melby, again verbally, that it was permissible to bill over the supposed $12,500 fee cap. As before, Veea

provided Melby with no written notification or confirmation. Based upon this information and the effort required to accomplish assigned tasks, Melby billed in excess of $12,500 for each of the subsequent three months.

27. Veea accepted Melby's invoices for this period but refused to pay the full amounts due, effectively reinstating the cap without any notice at all.

28. In a March 20, 2023 email to Melby, Mark Tubinis acknowledged Veea's liability for the unpaid amounts, stating "Let's first figure out how to get you paid for the 12,500." A true and accurate copy of this email is attached hereto and incorporated herein by reference as **Exhibit C**.

29.  The past due amounts from the above-referenced period were not paid until February, 2024, nearly a year after they were due.

30. Moreover, the above-referenced instance was not a singular event; Veea fell into a pattern and practice of being delinquent on its payments to Melby.

31. From in or about January 2023 to the date of the within Verified Complaint, Melby made repeated efforts to hold Veea accountable to its own contractual terms, and to obtain payments due for hours worked and justified. Throughout this period, Veea repeatedly made promises to pay which promises went unfulfilled for months at a time.

32. Over a period of time, it became clear to Melby that Veea actually regarded him and treated him as an employee, but without giving him the benefits, rights, and opportunities of an employee. For example, Melby was not given the opportunities afforded other similarly-situated employees at Veea, such as contributions to 401K plans, health, vacation, or sick time, personal time benefits, and vesting opportunities.

33. Veea's classification of Melby as an independent contractor (but treatment of him as an employee) hindered his ability to recover payments and income, apply for unemployment benefits, and to receive extended benefits.

34. Moreover, the Consulting Agreement itself is inconsistent with its stated intent of establishing an independent contractor relationship as set forth in the following examples:

   a.    The Contract defines the scope of work as "…such services as Company may determine from time to time…" (Sec 3.2), the practical effect of which is that Veea directly assigns Melby's work and scope, which, in practice, never was tied to a specific bounded project.

   b.    The Contract requires Melby's personal performance and specifically prohibits subcontracting.

   c.    The Contract requires that Melby assign to Veea all ownership rights in all intellectual property he develops as a result of the contract.

   d.    The Contract provides for reimbursement of pre-approved expenses.

   e.    Company personnel review and approve Melby's work product.

   f.    Melby has a Company email address, and the primary tools he uses for online services, for example, Microsoft Office, Atlassian Confluence and JIRA – are all provided by Veea.

   g.    Melby is paid by the hour, subject to payment caps decided unilaterally by Veea. The services that Melby performs (product management, solution architecture development, engineering management, and product marketing, as well as day-to-day problem solving) are done in the ordinary course of, and are integral to, Veea's business.

   h.    Veea approves Melby's hours and has required him to approve the timesheets of other contractors.  For example, see the September 2022 email chain attached hereto as **Exhibit D** wherein Melby is asked to approve a weekly timesheet.

   i.    Melby has been introduced in meetings as though he were a Company employee with a title similar to "Head of Product." See, for example the Slack chain dated August 19, 2022 between and among Michael Elling, Tom Williams, William Hurley, and Joel Melby attached hereto as **Exhibit E.**

j.      Melby is expected to participate in a number of regular weekly Company meetings, and he has, until recently, led a team of employees who have worked on a number of different projects.

k.      Melby is required to perform day-to-day tasks similar to those regularly performed by employed personnel.

l.      Melby has been invited to employee-only meetings as an employee. See, for example, a copy of the February 24, 2023 email attached hereto as **Exhibit F** wherein he is being invited to an "Employee Town Hall."

m.      Melby was tasked with leading Veea's efforts to establish a new line of business, referred to as "AdEdge", which became Veea's primary revenue source (as attested on page 58 of Veea's most recent SEC 10-K filing, an excerpt of which is attached hereto as **Exhibit G**). As part of this effort, Melby negotiated supplier agreements (with LiveDOOH Ltd, a UK Company) and partner agreements (with BringitHome Communities Inc., a Nevada Company). As a result, Melby became Veea's primary resource for AdEdge-related expertise, as evidenced by a February 27, 2024 email request from defendant, Janice Smith, attached hereto as **Exhibit H.**

n.      Veea has been the source of the majority of Melby's income since February 2021. From February 2021 through May 2022, and again from June, 2023 through May, 2025, it was his *only* source of income.

The above examples are representative, but not necessarily exhaustive, of Melby's

employee status with Veea.

### Veea Engaged in a Pattern of Making Late Payments, Underpayments, Failure to Pay Wages and  Benefits, and Misclassification Under the Massachusetts <u>Wage Act and the New York Labor Law.</u>

35. In the aggregate, the above-stated examples are indicia of an employer/employee

relationship under both the Massachusetts Wage Act and the New York Labor Law.

36.  As set forth in the chart attached hereto and incorporated herein by reference as **Exhibit I,**

Veea paid Melby late on a significant number of occasions, failed to pay him for certain

overtime hours, and deprived him of benefits offered to similarly-situated employees, such

as Mohan Gundu and Whitney Weller.

37. Representative of this practice was the situation described in the above-referenced email dated March 20, 2023 from Mark Tubinis to Melby regarding payment for Melby's invoice Number 37.  The email states in part: "Let's first figure out how to get you paid for the 12,500. I need to get Allen [Veea's CEO] to remember all of the commitments he has put out there. He is writing checks that can't be cashed all the time and asking for forgiveness when he can't make good on his word or having selective memory. I am forcing everything to be in writing at this point with him." A true and accurate copy of the above-referenced email is set forth in **Exhibit C.**

38. The above-referenced email is representative of a number of emails that caused Melby to feel compelled to transmit seeking payment or information about when he would be paid. In one such exchange, dated February 13, 2023, Jeff Friedman, then Veea's Chief Financial Officer, represented to Melby "Allen just returned from a trip overseas where he's been working to complete a financing round. As soon as it closes, we'll get caught up."

39. Whether Veea was actually having cash flow problems as of the date of the above-referenced email, or whether Friedman's email was expressing a convenient excuse, the fact remains that Veea paid Melby late multiple times while continuing to task him with more assignments. This behavior continued throughout the remainder of Melby's tenure with Veea.

**Melby's Multiple Payment Demands Were Ignored by Veea**

40. Melby tolerated the situation described in the above-referenced paragraphs for a period of time, but it became increasingly problematic for Melby, not only because it became a pattern of Veea's, but also because it severely impacted Melby's cash flow.

41.  Melby made his concerns known to Veea in an email dated April 21, 2023, a true and

accurate copy of which is attached hereto as **Exhibit J.** The email provides, in part, as

follows:

> On another note, I was perfectly content to be a consultant, giving Veea a preferred rate
> of $200 per hour. That rate has never been adjusted / increased. However, that rate
> assumed I would be paid on time for a more or less normal workload. There was never
> any provision for a unilateral dollar cap (which has now happened twice). I have had
> very little of anything of consequence put in writing (which would be a proper business
> practice). Now let's talk about the Contract itself. Despite my best efforts to negotiate
> more reasonable, mutually beneficial terms, the contract was very one-sided. I felt there
> was no point in bringing this up in the past, since I didn't really have a contract after the
> first 3 months. In fact, there are terms that seem to defy certain state laws, not to mention
> that Veea seems unconcerned with honoring the terms that are there (e. g., to pay on
> time). Let's just say for now that there's all kinds of wrong with this agreement. Lastly on
> this subject, I worked without a valid contract between Feb, 2020 and July, 2022, until
> Janice (and thus Veea) needed to paper things over with a backdated amendment. Again,
> I asked for some renegotiated terms and was told "you know that Allen won't do that." In
> short, poor business practices are not acceptable and Allen is not exempt from those
> constraints…
>
> … I am formally requesting full payment. I simply cannot survive with no compensation
> for work I've already performed over the past 4 months. It has become clear to me that I
> have been treated like an employee, but without any of the protections, support, or
> benefits (I'm assuming that Veea has been making payroll ). Also, I have a growing
> concern that, although I seem to be an integral part of Veea's future (e.g., all the new
> deals, directions, and initiatives that pop up all the time), I have no protections,
> assurances or prospective share in any upside that may result from my efforts. Lastly,
> between you and I, I agree with you that Allen has the potential for retaliatory behavior
> should I even attempt to stand up for myself or to try to negotiate a more reasonable
> situation.

42. Despite the formal request set forth above, the situation identified by Melby in the April 21,

2023 email did not resolve.  It persists as of the date of the within Verified Complaint, as

evidenced by the representative sequence of emails aggregated as **Exhibit K**, attached

hereto and incorporated by reference.

43. On April 11, 2025, Melby had a phone meeting with defendant, Attorney Janice Smith. In

that meeting, Smith acknowledged that Veea owed significant sums to Melby, and advised

Melby that Veea had a cash shortfall. Smith asked Melby to be patient. In this phone

conversation, Smith did not provide any indication that Veea would not pay Melby, nor did

Smith suggest that Veea was contemplating a termination of the Contract or a directive that

Melby cease performing work for Veea.  Smith's representations to Melby led him to

believe that his tenure would continue.

44. Melby and Smith agreed that Melby should speak with defendant, Michael Salmasi, to

prioritize the work that needed to be completed, and to make sure those priorities were

aligned with those of defendant, Allen Salmasi. Melby recapped his April 11, 2025 phone

conference with defendant, Smith in an April 16, 2025 email to her, a true and attached

copy of which is attached hereto and incorporated herein by reference as **Exhibit L**.

45.  On April 18, 2025, Melby had a regularly-scheduled phone meeting with defendant,

Michael Salmasi, the usual purpose of which was to discuss Veea task progress, upcoming

tasks, and future direction for Melby's assignments. During this call, Michael confirmed

Melby's tasks and direction. Melby asked again about funding and payments of Melby's

invoices. During the phone conversation,  Michael represented to Melby that Veea had

obtained some funding, but he did not provide additional information about the funding.

46. Michael Salmasi's representations set forth above led Melby to believe that he would be

paid in the near term.


**Veea's Prolonged Failure to Pay Melby the Monies He is owed, Coupled with its
Multiple Unfulfilled Promises, Has Caused Melby to Suffer from Emotional
<u>Distress.</u>**

47. As a result of Veea's lack of clear communication, deliberately mixed messaging, and

apparent lack of intent to pay Melby the monies he is owed, Melby began to suffer stress,

nervousness, fatigue, and sleeplessness for all of which, he sought treatment with a mental health provider commencing on April 29, 2025.

48. At about this time, Melby's lack of income over a sustained period of time stemming from Veea's failure and refusal to pay his invoices, so degraded Melby's financial position, that he was compelled to sell his home in Vermont, because he could no longer afford to maintain that property and the lifestyle to which he had previously become accustomed.

49. The condition set forth in the preceding paragraph added to Melby's emotional distress.

50. As of the date of the within Verified Complaint, Melby continues to suffer from emotional distress directly and proximately caused by Veea's failure and refusal to pay him.

51. As of the date of the within Verified Complaint, Melby continues to seek treatment for his emotional distress.

52. Prior to the onset of the current dispute with Veea, Melby had no record of having suffered emotional distress.

**After Stalling Him for Months, and Claiming that it Had No Funds to Pay Him, Veea Placed Melby on "Hiatus," But It Has Continued to Fail and Refuse to Pay Him for Work Actually Performed.**

53. In a May 1, 2025 phone call, Michael Salmasi advised Melby that he was being placed on a "hiatus," a term with no definition in law or in the Contract.

54. In the above-referenced phone call, Michael Salmasi told Melby that a "hiatus" was not a termination of the Contract, and that any schedule for payment of past due payments owed to Melby would have to come from Attorney Smith.

55. Melby summarized the above-referenced call in a May 2, 2025 email from Melby to Michael Salmasi and Attorney Smith, a true and accurate copy of which is attached hereto and incorporated herein by reference as **Exhibit M**.

56. A subsequent call between Melby, Melby's business advisor/manager Diane Massa, and Attorney Smith occurred on May 6, 2025. In that call, Melby reaffirmed his desire to have Veea adhere to the terms of the Contract.

57. In that same call, Attorney Smith reiterated that Veea had insufficient funds, and claimed she had no authority to make any payments. She advised Melby that "[defendant] Allen [Salmasi] has the checkbook", and she directed Melby to speak directly with Mr. Salmasi. Smith was also adamant that Melby's contract with Veea had not been terminated.

58. Melby attempted to speak with Allen Salmasi through a What'sApp conversation on May 10 and May 14, 2025 about "our financial situation," but Mr. Salmasi told Melby that Salmasi was trying to close a financing deal and that he would "...circle back after we are done". Melby interpreted this to mean that he would be paid once the financing closed.

59. Thus, as set forth in the preceding paragraphs, when Melby sought clear answers from Michael Salmasi about when he would be paid, he was directed to speak to Attorney Smith, who told him that this question could be answered only by Allen Salmasi, who told him that an answer would come once "financing" had closed. Thus, each of the defendants, Michael Salmasi, Janice Smith, and Allen Salmasi, intentionally played a game of "phone runaround" with Melby in a further attempt to hinder, delay, and defraud him.

**Attorney Smith's False Representations to Melby, if Knowing and Deliberate, Could Constitute Ethics Violations**

60. Upon information and belief,  Attorney Smith's false representations to Melby as set forth in the preceding paragraphs that Veea had insufficient funds to pay him (although upon information and belief, it was paying her and other employees, and in the final months of 2024, had completed a merger and public offering that provided a significant cash infusion); that his contract had not been terminated, when for all intents and purposes, it had been, and that she had no authority to issue payment for him, when Michael Salmasi, Allen Salmasi's son, and the co-founder of Veea, stated otherwise, were made knowingly, willfully, and with malice.

61. In connection with the above, upon information and belief, Attorney Smith's statements violated one or more rules of the New York Rules of Professional Conduct, including: Rule 4.1 (Truthfulness in Statements to Others -- A lawyer shall not knowingly make a false statement of fact or law to a third person); Rule 8.4(c) (Misconduct – dishonesty, fraud, deceit, misrepresentation ----- Even if not in litigation, a lawyer may not engage in dishonesty or conduct involving deceit (i.e. not only misrepresenting the company's financial position but participating in a  "phone runaround" together with Michael and Allen Salmasi as a coordinated deceptive tactic to further delay and defraud Melby; Rule 1.2(d) (A lawyer shall not counsel or assist a client in conduct the lawyer knows is illegal or fraudulent. Upon information and belief, Smith knew Veea was intentionally stringing Melby along without intent to pay, thus, her participation would constitute improper assistance., and Rule 8.4(d) Conduct prejudicial to the administration of justice, such as labeling a contract termination a  "hiatus" as a ruse and part of a bad-faith scheme.

62. Moreover, the failure to respond to a single one of Melby's three written payment demands, as set forth below, constituted a further effort to hinder, delay, and defraud him.

63. Melby provided Attorney Smith with an update via email dated May 24, 2025, a true and accurate copy of which is attached hereto and incorporated herein by reference as **Exhibit N**.

64. As of the date of the within Verified Complaint, Veea has never provided Melby with a response to his May 24, 2025 correspondence.

## **Veea Has Failed and Refused to Respond to Melby's Three Separate Payment Demands**

65. Melby made additional payment demands to Veea, and specifically to Allen Salmasi, Attorney Smith, and Michael Salmasi, via email on June 9, 2025 and June 30, 2025, true and accurate copies of which are attached hereto and incorporated herein by reference as (**Exhibits O and P, respectively**).

66. As of the date of the within Verified Complaint, Veea made no response to the above-referenced payment demands.

67. By letter dated August 1, 2025, a true and accurate copy of which is attached hereto and incorporated herein by reference as **Exhibit Q,** Melby made an additional  written payment demand on Veea and the defendants named herein.

68. As of the date of the within Verified Complaint, the defendants have not responded to the August 1, 2025 demand.

69. Notwithstanding Michael Salmasi's representations to Melby, Veea's placing Melby on "hiatus" was, in fact, a unilateral termination of the Contract.

70. Veea used the term 'hiatus," in part, to avoid its obligations under the Massachusetts Wage Act and New York Labor Law.

**Veea's Claim of Insufficient Funds to Pay Melby is Belied by Its SEC Filings**

71. Throughout 2025, Veea's officers have, to the limited extent that they have responded to Melby's entreaties for payment, claimed that the company lacked sufficient funds to honor its obligations to Melby.

72. In fact, Veea closed $5.3 Million in capital funding through a public offering on or about August 14, 2025, as declared in Veea's August 14, 2025 8-K filing with the SEC, attached hereto and incorporated herein by reference as **Exhibit R.**

73. On page 32 of Veea's subsequent quarterly 10-Q filing, attached hereto and incorporated herein as **Exhibit S,** Veea indicated its intent and ability to "...fund its operations and capital funding needs for the next 12 months..." and has stated "that Veea has a reasonable basis to believe it has alleviated substantial doubt regarding its ability to continue as a going concern." On page 34 of the same document, Veea reported increases in the annual base salaries of defendant Janice Smith and its new CFO, Randal Stephenson (appointed on July 15, 2025).

74. Thus, the defendants' representations and promises to Melby about the ability to – or cause of delay for – paying Melby's seriously overdue invoices, are belied by its own public filings with the federal Securities and Exchange Commission made under oath.

**Melby has Complied with Conditions Precedent to Bring a Massachusetts Wage Act Complaint**

75. On August 14, 2025, Melby filed a form wage act complaint against Veea with the Massachusetts attorney general. A true and accurate copy of Melby's wage act complaint is attached hereto and incorporated herein by reference as **Exhibit T.**

76. On August 14, 2025, the Massachusetts attorney general issued Melby a right-to-sue letter, a true and accurate copy of which is attached hereto and incorporated herein by reference as **Exhibit U.**

77. As of the date of the within Verified Complaint, Veea owes $118,417.70 to Melby, exclusive of treble damages that may be awarded under statute, attorneys' fees, interest, and costs, as set forth in the chart attached hereto and incorporated herein by reference as **Exhibit V.**

## CAUSES OF ACTION

### Count I

### (Breach of Contract – Consulting Agreement --, Melby LLC v. Veea)

78. Melby realleges and incorporates by reference each of the foregoing allegations of this Verified Complaint as though fully set forth herein.

79. For good and valuable consideration, Melby LLC and Veea entered into the Consulting Agreement.

80. Melby LLC performed fully under the Consulting Agreement.

81. The Consulting Agreement provides that all disputes arising thereunder are to be litigated in the state and federal courts of New York.

82. Veea breached the Consulting Agreement by repeatedly failing and refusing to pay, without justification, to pay Melby LLC for work actually performed and expenses incurred as reflected in Melby LLC's invoices and pursuant to Veea Inc.'s own contractual terms.

83. As a result thereof, Melby LLC has been damaged in an amount not less than $118,417.70 for actual invoices, reported expenses, and failure to honor the contractual 30-day notice period.

   **WHEREFORE, Melby LLC demands judgment against Veea for compensatory damages, costs, interest, and such other and further relief as the Court deems just and proper.**


Count II

(Breach of the Covenant of Good Faith and Fair Dealing –Melby LLC v. Veea)

84. Melby realleges and incorporates by reference each of the foregoing allegations of this Verified Complaint  as though fully set forth herein.

85. The Consulting Agreement incorporates a covenant of good faith and fair dealing implied at law.

86. Veea breached the covenant of good faith and fair dealing by, among other things: (a) repeatedly failing and refusing to pay, without justification, to pay Melby LLC for work actually performed as reflected in Melby LLC's invoices and pursuant to Veea Inc.'s own contractual terms; (b) stringing Melby LLC along over multiple months with promises of financing which never materialized; (c) purporting to pay and classify Melby through Melby LLC as an independent contractor when Melby satisfied all of the indicia of being an employee; (d) depriving Melby through Melby LLC of the benefits afforded other similarly situated employees; (e) backdating the Consulting Agreement; (f) ignoring multiple demands for payment; (g) failing and refusing to negotiate with Melby in good

faith to resolve Veea's failure to pay, and (h) failing and refusing to pay after securing sufficient funds to pay Melby.

87. As a result of the foregoing, Melby LLC has been damaged in an amount to be determined.

**WHEREFORE, Melby LLC demands judgment against Veea for compensatory damages, costs, interest, and such other and further relief as the Court deems just and proper.**

Count III

(Violation of the Massachusetts Wage Act -- Mass. Gen. Laws ch. 149, §§ 148, 150– Melby and Melby LLC against all Defendants)

88. Melby realleges and incorporates by reference each of the foregoing allegations of this Verified Complaint as though fully set forth herein.

89. At all relevant times, Melby was a Massachusetts resident who performed his work and services for Defendants substantially from Massachusetts. Defendants directed payments, or failed to make payments, to Plaintiff in Massachusetts. Accordingly, Plaintiff is an 'employee' within the meaning of the Massachusetts Wage Act, and the work at issue was performed in Massachusetts.

90. At all relevant times, Defendants, Veea Inc., VeeaSystems Inc., and the individual defendants named herein, were "employers" within the meaning of the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, §§ 148, 150.

91. Plaintiff, Joel Melby, through Melby LLC, performed work and services for Veea within the meaning of the Massachusetts Wage Act.

92. From in or about February, 2021 to in or about April, 2025, Veea was Melby's primary or sole source of income.

93. Although Veea purported to classify Melby as an independent contractor, the nature of the work, Veea's' control over Melby's duties, hours, and scope of work, Veea's provision of a company title and email, and the holding out of Melby to third parties as an employee establish that he was an "employee" protected by the Massachusetts Wage Act.

94. Veea was required under the Massachusetts Wage Act to pay Melby all of Melby's invoices owed, in full and on a timely basis.

95. Defendants failed to pay Melby his wages on numerous occasions by paying late and, during the final weeks of his affiliation, failing to pay him at all.

96. In or about the summer of 2025, Melby made written demands on Veea for the payment of all earned but unpaid wages, as permitted under the Massachusetts Wage Act.

97. Veea failed and refused to make any such payments.

98. The defendants are also liable under M.G.L. ch. 149, § 148B in that they labeled Melby as an independent contractor when he was actually an employee.

99. Melby has calculated the total of the damages which would be imposed under the Massachusetts Wage Act for his five year, seven month tenure with Veea. These damages include those arising from the impact of late and missing payments, as well as the value of benefits to which he would have been entitled as an employee. **Exhibit W** sets forth a more detailed analysis of these damages.

100. At all times material hereto, the individual defendants, Allen Salmasi, Janice Smith, and Michael Salmasi, were corporate officers and persons having the management of

Defendants' business, including responsibility for decisions concerning payroll and compensation.

101.  Each of the individual defendants is individually liable to the plaintiffs under the Massachusetts Wage Act.

102.  The defendants failed to pay Melby within seven days of the termination of the pay period during which the wages were earned in violation of Mass. Gen. Laws ch. 149, § 148.

103.  Defendants' violations of the Massachusetts Wage Act were willful.

104.  Upon information and belief, Veea, and specifically, defendant, Allen Salmasi, deliberately refused to pay Melby in retaliation for Melby's multiple payment demands.

105.  Defendants' failure to pay Melby after securing sufficient funds to do so constitutes a retaliatory act under the Massachusetts Wage Act. Reinstatement is not feasible due to hostility and impracticability; therefore Melby is entitled to future wages and benefits lost as a direct consequence of the retaliation. Melby's age (63) and specialized work experience make securing comparable employment difficult, despite ongoing and active efforts to seek such employment.

106.  As a result thereof, Melby has been damaged in an amount to be determined.

**WHEREFORE, Melby LLC and Melby demand judgment against Veea for compensatory damages, punitive damages as mandated by the statute, costs, interest, reimbursement of reasonable attorney's fees, and such other and further relief as the Court deems just and proper.**

Count IV

<u>(Successor Liability Against VeeaSystems, Inc.</u>

<u>Melby and Melby LLC Against All Defendants</u>

107.  Melby realleges and incorporates by reference each of the foregoing allegations of this

Verified Complaint  as though fully set forth herein.

108.  Upon information and belief, VeeaSystems, Inc., expressly or impliedly assumed Veea's

liabilities.

109.  Upon information and belief, the creation of VeeaSystems, Inc., was a *de facto* merger

with Veea.

110.  VeeaSystems, Inc. is a mere continuation of Veea.

111.  Upon information and belief, VeeaSystems operates substantially with a continuity of

Veea's operations and workforce.

112.  Upon information and belief, VeeaSystems has had actual and constructive notice of

Melby's wage claims.

113.  In the event Veea is judgment-proof, VeeaSystems is liable to Melby as set forth in the

preceding paragraphs.

114.  In the alternative, upon information and belief, Veea exercises dominion and control over

VeeaSystems to the effect of committing a fraud to avoid Veea's wage obligations under

both Massachusetts and New York law.

<u>Count V</u>

Violation of the New York Labor Law (NYLL §§ 191, 198)

<u>– Melby and Melby LLC against all Defendants)</u>

115.  Melby realleges and incorporates by reference each of the foregoing allegations of this
      Verified Complaint  as though fully set forth herein.

116.  At all relevant times, Defendants were "employers" within the meaning of the New York
      Labor Law.

117.  Plaintiff Joel Melby performed work and services for Defendants, which services were
      delivered to the Defendants in New York. Although Defendants purported to classify Melby
      as an independent contractor, the degree of control exercised by Defendants over Melby's
      work, including defining his scope of duties, assigning him a title, directing his strategic
      planning responsibilities, and requiring the use of company email accounts, establish that
      Melby was an "employee" under the New York Labor Law.

118.  Pursuant to NYLL §§ 191 and 198, Defendants were required to pay Melby his earned
      wages on a timely basis.

119.  Defendants failed to pay Melby wages earned, both by paying him late and by failing to
      pay him altogether for the final weeks of his service.

120.  Defendants' failure to pay Melby his earned wages violated NYLL §§ 191 and 198.

121.  The individual defendants exercised operational control over Veea, including authority
      concerning payroll, and are therefore personally liable for the wage violations under the
      New York Labor Law.

122.  Defendants' violations of the New York Labor Law were willful.

123.  Upon information and belief, Veea, and specifically, defendant, Allen Salmasi,
      deliberately refused to pay Melby in retaliation for Melby's multiple payment demands.

124.  Defendants' failure to pay Melby after securing sufficient funds to do so constitutes a
      retaliatory act under the New York Labor Law. Reinstatement is not feasible due to hostility

and impracticability, therefore Melby is entitled to future wages and benefits lost as a direct

consequence of the retaliation. Melby's age (63) and specialized work experience make

securing comparable employment difficult, despite ongoing and active efforts to seek such

employment.

**WHEREFORE, Melby LLC and Melby demand judgment against Veea for**

**compensatory damages, punitive damages as mandated by the statute, costs, interest,**

**reimbursement of reasonable attorney's fees, and such other and further relief as the**

**Court deems just and proper.**

Count VI

Violation of the New York City Freelance Isn't Free Law

(Melby LLC v. Veea Inc.),

125.  Melby realleges and incorporates by reference each of the foregoing allegations of this

Verified Complaint as though fully set forth herein.

126.  The New York City Administrative Code § 20-927 *et seq*., also known as the Freelance

Isn't Free Act ("**FIFA**"), requires a hiring party who has retained services of a freelance

worker which services are worth at least $800 to reduce to writing the contract between

hiring party and worker. (*See* Administrative Code § 20-928 [a].).

127.  Administrative Code § 20-92 requires hiring parties to pay freelance workers either on

the payment date set by the contract or, absent a set payment date, no later than 30 days

from the completion of the contractual work. (Administrative Code § 20-929 [a] [1]-[2].) It

also provides that once the freelancer has begun performing that contractual work, a hiring

party may not "require as a condition of timely payment that the freelance worker accept less compensation than the amount of the contracted compensation." (*Id.* § 20-929 [b].)

128.  If a hiring party failed to enter into a written contract and violated any other provision of the law a court may order the hiring party to pay the freelance worker damages equal to the value of the contract.

129.  A court may also award the freelance worker reasonable attorneys' fees and costs incurred in bringing the action.

130.  In the matter to which the instant Verified Complaint pertains, Melby was working for Veea, a New York City-based corporation, providing services valued at well over $800 without a written contract from February 1, 2020 through June 28, 2022.

131.  In connection with the above, and based on Veea's representations to him, Melby labored under the misapprehension that Veea would be providing him with a written contract and continued to work without one under that mistaken belief.

132.  As a result thereof, Melby has been damaged.

133.  Upon information and belief, Veea, and specifically, defendant, Allen Salmasi, deliberately refused to pay Melby in retaliation for Melby's multiple payment demands.

134.  Defendants' failure to pay Melby after securing sufficient funds to do so constitutes a retaliatory act under the FIFA. Reinstatement is not feasible due to hostility and impracticability, therefore Melby is entitled to future wages and benefits lost as a direct consequence of the retaliation. Melby's age (63) and specialized work experience make securing comparable employment difficult, despite ongoing and active efforts to seek such employment.

135.  Melby has calculated the total damages and penalties which would be imposed under

FIFA.  As set forth in the chart at **Exhibit X** a true and accurate copy of which is attached

hereto and incorporated herein by reference.

**WHEREFORE, Melby LLC and Melby demand judgment against Veea for compensatory damages, punitive damages as mandated by the statute, costs, interest, reimbursement of reasonable attorney's fees, and such other and further relief as the Court deems just and proper.**

Count VII

Misrepresentation/Fraud

(Melby and Melby LLC v. All Defendants)

136.  Melby realleges and incorporates by reference each of the foregoing allegations of this

Verified Complaint as though fully set forth herein.

137.  During the spring and summer of 2025, the individual defendants, acting on behalf of

Veea Inc., made repeated representations to Plaintiff Melby, both orally and in writing, that

Veea was in the process of securing new financing and that, upon the closing of such

financing, Melby would be paid the wages and compensation owed to him.

138.  These representations included, among other things, specific assurances on dates to be set

forth in detail in the factual allegations of this Complaint, that financing was imminent and

that payment to Melby would be forthcoming.

139.  Specific examples of these representations including dates and locations are set forth in paragraphs **37, 38, 43, 44, 45, and 58**, above, as well as in exhibits K and L.

140.  At the time these representations were made, the individual defendants knew, or recklessly disregarded, that such statements were false, and that Veea either had no reasonable prospect of obtaining the financing described, or no genuine intention of using such financing to pay Melby.

141.  Defendants made these representations for the purpose of inducing Melby to continue providing services to Veea without payment, and to forbear from taking immediate legal action to collect wages owed.

142.  Melby reasonably relied upon these representations in continuing to provide services to Veea and in delaying the pursuit of legal remedies.

143.  As a direct and proximate result of Defendants' misrepresentations and fraudulent conduct, Melby suffered damages, including but not limited to unpaid wages, consequential losses, costs of collection, and other harms to be proven at trial.

**WHEREFORE, Melby LLC and Melby demand judgment against all defendants for compensatory damages, costs, interest, and such other and further relief as the Court deems just and proper.**

Count VIII

Intentional Infliction of Emotional Distress

(Melby v. All Defendants)

Melby realleges and incorporates by reference each of the foregoing allegations of this Verified Complaint as though fully set forth herein.

144.  The individual defendants, acting on behalf of Veea Inc., engaged in extreme and outrageous conduct by repeatedly stringing Plaintiff Melby along with knowingly false promises of imminent payment, despite being fully aware that no such payment would be forthcoming.

145.  Defendants intentionally exploited Melby's reliance on their authority as corporate officers and decision-makers, and deliberately induced him to continue working without pay while knowing he was depending on such compensation for his livelihood.

146.  Such conduct, when carried out by those in a position of employer-like authority over an individual's livelihood, is extreme and outrageous, exceeding all bounds of decency tolerated in a civilized society.

147.  Defendants acted intentionally and with reckless disregard of the substantial probability of causing Melby severe emotional distress.

148.  As a direct and proximate result of Defendants' intentional infliction of emotional distress, Melby suffered severe emotional distress, humiliation, anxiety, and mental anguish.

149.  Such conduct, taken as a whole, exceeds all bounds of decency tolerated in a civilized society and constitutes extreme and outrageous behavior under New York law.

150.  Defendants acted with the intent to cause, or with reckless disregard of the substantial probability of causing, severe emotional distress to Melby.

151.  As a direct and proximate result of Defendants' intentional infliction of emotional distress, Melby suffered severe emotional distress, humiliation, anxiety, and mental anguish.

**WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory damages, punitive damages, costs, interest, and such other and further relief as the Court deems just and proper.**

### Count IX

Negligent Infliction of Emotional Distress

(Melby v. All Defendants)

152.  Melby realleges and incorporates by reference each of the foregoing allegations of this Verified Complaint as though fully set forth herein.

153.  In the alternative, Defendants owed Plaintiff Melby a duty of care to deal with him honestly, fairly, and without subjecting him to unnecessary risk of emotional harm.

154.  Defendants breached this duty by engaging in conduct that unreasonably endangered Melby's emotional well-being, including repeatedly making false assurances of imminent payment, withholding earned wages, and causing him to continue providing services under false pretenses.

155.  Defendants knew or should have known that their conduct involved an unreasonable risk of causing emotional distress, and that such distress, if it were caused, could result in illness or other serious harm.

156.  As a direct and proximate result of Defendants' negligent conduct, Melby suffered severe emotional distress, humiliation, anxiety, and mental anguish.

**WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory damages, punitive damages, costs, interest, and such other and further relief as the Court deems just and proper.**

<u>Count X</u>

Count for Trustee Process Attachment
(Melby and Melby LLC v. All Defendants)

157.  Melby realleges and incorporates by reference each of the foregoing allegations of this Verified Complaint as though fully set forth herein.

158.  Pursuant to Fed. R. Civ. P. 64, this Court may, at the commencement of and throughout this action, seize property and employ provisional remedies available under the law of the forum state.

159.  Under CPLR § 6201(3), attachment is authorized where the defendant, with intent to defraud creditors or frustrate the enforcement of a judgment, has assigned, disposed of, encumbered, or secreted property, or is about to do so.

160.  Defendants, having repeatedly failed to pay wages owed, and having strung Plaintiff along with knowingly false assurances of imminent payment tied to financing that never materialized, have demonstrated intent to frustrate the enforcement of a judgment in this matter.

161.  There is a substantial risk that, absent attachment, Defendants will further dissipate, encumber, or conceal assets in order to avoid satisfying any judgment entered in favor of Plaintiffs.

**WHEREFORE, Plaintiffs seek one or more orders for trustee process attachments directed to the named trustees to the value of $2.5 Million, and such other and further relief as the Court deems just and proper.**

## PRAYERS FOR RELIEF

A. Pursuant to Count X, Rule 64 of the Federal Rules of Civil Procedure and CPLR §§ 6201 et seq., enter one or more orders of attachment and trustee process against the property, assets, bank accounts, or other interests of each of Defendants, Veea Inc., Allen Salmasi, Janice, Smith, and Michael Salmasi to the amount of Three Million ($3,000,000.00) DOLLARS;

B. Enter judgment for Melby LLC on Count I (Breach of Contract) in an amount to be determined;

C. Enter judgment for Melby LLC on Count II (Breach of the Covenant of Good Faith and Fair Dealing) in an amount to be determined;

D. Enter judgment for Melby LLC and Melby on Count III (Violations of the Massachusetts Wage Act) in an amount to be determined, treble such award pursuant to the statute, and award the plaintiffs their reasonable attorneys' fees and costs;

E. Enter judgment for Melby LLC and Melby on Count IV (Successor Liability Against VeeaSystems, Inc.).

F. Enter judgment for Melby LLC and Melby on Count V (Violations of the New York Labor Law) in an amount to be determined, plus punitive damages as

allowed by statute, and award the plaintiffs their reasonable attorneys fees and

costs;

G.  Enter judgment for Melby LLC on Count VI (the Freedom Isn't Free Act) in an

amount to be determined;

H.  Enter judgment for Melby LLC and Melby on Count VII (Misrepresentation and

Fraud) in an amount to be determined;

I.  Enter judgment for Melby on Count VIII (Intentional Infliction of Emotional

Distress) in an amount to be determined;

J.  Enter judgment for Melby on Count IX (Negligent Infliction of Emotional

Distress) in an amount to be determined, and;

K.  Enter such further relief as the Court deems equitable and just  under the

circumstances

## JURY DEMAND

The plaintiffs demand a trial by jury on all counts so triable

MELBY LLC and
JOEL MELBY

By their Attorneys,

*Frederic abramson*

Frederic R. Abramson,
FA3918
160 Broadway, Ste 500
New York, New York 10038
(212)233-0666

fmson@abramsonlegal.com

Seth H. Salinger
(Mass BBO# 555426)
Pro Hac Vice Admission Pending
Admitted in the District of Massachusetts
39 Charlemont Street
Newton, MA  02461
(617) 678-9618
sethsal@gmail.com

**<u>Verification</u>**

I, Joel Melby, a plaintiff herein, hereby certify that I have reviewed the foregoing Complaint and exhibits.  I certify that, to the best of my knowledge, information, and belief, all of the facts alleged therein are true and accurate, based on my participation with them and the defendants, and that so much of the facts as are alleged upon information and belief, I believe, upon reasonable investigation, to be true and accurate.

Signed under the pains and penalties of perjury this 5th day of September 2025.

_____
Joel C. Melby